United States District Court
Southern District of Texas
**ENTERED**
March 28, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| REMILEKUN K. DAVIS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-17-890 |
| § | |
| JEFFERSON B. SESSIONS, *et al.* § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

The plaintiff, Remilekun Davis, was detained on March 20, 2017 during his annual "check-in" with Immigrations and Customs Enforcement, or ICE. Because he served in the United States military during a period of conflict, Davis was eligible for "military naturalization" under the Immigration Nationality Act § 329. His application was denied because the United States Citizenship and Immigrations Services found that Davis was not a person of good moral character. Davis seeks a temporary restraining order releasing him from ICE custody because his naturalization application was wrongfully denied and his current confinement results from that decision.

Based on careful review of the application and response, the record, and the relevant law, Davis's temporary restraining order application is denied. (Docket Entry No. 4). The reasons are set out below.

**I.    Background**

    **A.    Factual Background**

Davis's actual history is unclear. What is clear is that his description of his own life changed often. Fact and fiction became hard to separate years ago. Davis now alleges that he does not know where he was born or where his parents are, and that he is "stateless." Davis alleges that he grew

up with a U.S. Virgin Islands birth certificate and believed that he had been adopted from that territory. He filed an asylum application under the name Akeem Aderemi Lawal in January 1997, stating that he was a Nigerian citizen. (Docket Entry No. 5, Exs. A, B). Davis was ordered to show cause and appear before an immigration judge; he failed to appear. (*Id.*, Ex. C). The court granted Davis voluntary departure, but after he failed to leave, a final order removing him to Nigeria was issued. (*Id.*). Instead of leaving the country, Davis moved to Missouri and obtained a driver's license under a different name. (Docket Entry No. 4-1 at 13–14).

Davis served in the United States Army from April 2001 to August 2004. While serving in the Army, Davis applied for a passport. Davis alleges that during that process he first learned that his U.S. Virgin Islands birth certificate was fraudulent. But when he was arrested and charged with making a false statement on a passport application, he pleaded guilty. In 2004, Davis was arrested again and charged with making a false claim to U.S. citizenship, which later resulted in charges of making a false declaration before a grand jury. He pleaded guilty, received a 10-month sentence, and was placed in removal proceedings.

Davis applied for military naturalization in 2004, twice in 2009, and again in 2014. His application was denied all four times. When Davis reported to ICE for his yearly check-in on March 20, 2017, he was arrested and detained. He filed this petition after two days in ICE custody.

  **B. The USCIS Findings**

Davis applied for military naturalization on April 1, 2014. (Docket Entry No. 4 at ¶ 5). On June 3, 2015, his application was denied by the United States Citizenship and Immigration Services, or USCIS. (*Id.* at ¶ 5; Docket Entry No. 4–1 at 10–23). The sole reason for the denial was that Davis had not shown good moral character for at least one year before filing his naturalization

application. That decision stemmed from multiple inconsistencies in Davis's naturalization and asylum applications over the years and in his sworn statements before immigration officers. (Docket Entry No. 4-1 at 10–23).

The USCIS decision states that Davis "continue[d] to attempt to manipulate the facts regarding [his] entry into the United States" and "changed the story of [his] history so frequently in the many interviews and investigations which [] resulted from the creation of multiple identities, military service, multiple arrests, and multiple attempts to obtain status as a naturalized citizen of the United States" that Davis had "no credibility" on the issues identified by USCIS. (*Id.* at 19–20). The USCIS found that Davis's "version of the events regarding [his] history and memory loss is and has been a convenient and elaborate scheme [] used to manipulate and create a new identity" once Davis "became aware that [he was] not going to be able to obtain a valid status in the United States any other way." (*Id.* at 20). With that finding, USCIS determined that Davis had "again given false testimony under oath with the intent to obtain an immigration benefit" and therefore could not show that he had been a person of good moral character. (*Id.* at 20).

On July 2, 2015, Davis filed a Form N-336, to request a hearing on a decision in naturalization proceedings. His Form N-336 was denied on March 20, 2017—the same day he was detained by ICE.

C.     **Procedural Background**

Davis filed this petition for a writ of habeas corpus on March 22, 2017, a first amended complaint on March 23, 2017, and a second amended complaint on March 27, 2017. (Docket Entry Nos. 1, 2, 4). He alleges that his naturalization application was wrongfully denied, making his current detention in ICE unlawful. He seeks a temporary restraining order that would release him

from ICE custody. He also asserted a due process claim and seeks a writ of prohibition and judicial review of his naturalization application. (Docket Entry No. 4 at 13–15).

## II. The Legal Standards

### A. Temporary Restraining Order

A party seeking a temporary restraining order must prove each of the following elements: (1) that there is a substantial likelihood that the movant will prevail on the merits; (2) that there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the defendant; and (4) that the granting of the preliminary injunction will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

### B. Review of a Naturalization-Application Denial

"Congress alone has the constitutional authority to prescribe rules for naturalization." *Fedorenko v. United States*, 449 U.S. 490, 506–07 (1981) (footnote and citations omitted). Therefore, the courts' task is to ensure "strict compliance with the statutory conditions precedent to naturalization." *Id.* "[T]he burden is on the alien applicant to show his eligibility for citizenship in every respect . . . . [Any] doubts should be resolved in favor of the United States." *Kariuki v. Tarango*, 709 F.3d 495, 504 (5th Cir. 2013) *(*citing *Berenyi v. Dist. Dir., Immigration & Naturalization Serv.*, 385 U.S. 630, 637 (1967)). "An applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character. This includes the period between the examination and the administration of the oath of allegiance." 8 C.F.R. § 316.10(a)(1).

**III.     Analysis**

Davis contends that he has shown a substantial likelihood that he will prevail on the merits of his claim that his naturalization application was wrongfully denied, because he established that he had good moral character for the year before his application. That requirement states that "[t]o be eligible for naturalization . . . [a military] applicant must establish that he or she . . . [h]as been, for at least one year prior to filing the application for naturalization, and continues to be, of good moral character . . . ." 8 C.F.R. § 329.2(d).

Davis argues that his many inconsistent statements about his name and history are the result of his "statelessness." He asserts that "many, though not all" of the inconsistencies USCIS relied on in its decision were discrepancies between the facts, names, and dates presented in a 1996 asylum application and those presented later in Davis's four naturalization applications. Davis's counsel asserts that the 1996 asylum application was submitted by a "dubious legal representative" who was likely aware that the U.S. Virgin Islands birth certificate was illegitimate and was "attempting by deceptive means to regularize his immigration status which had been irreversibly botched." (Docket Entry No. 4 at ¶¶ 40–41). This explanation is wholly unpersuasive. Even disregarding the asylum application, Davis's explanation does not account for the wildly inconsistent facts in the naturalization applications and in statements he made to USCIS officers. The USCIS found that Davis failed to mention variations of his names he had used in the United States. (Docket Entry No. 4-1 at 13). Davis told USCIS that he "may" have given false or misleading information by failing to list all of his prior arrests on his first military naturalization application in 2005. (*Id.*). When asked how many times he had been ordered to be removed, Davis answered once; he was in fact ordered deported twice. (*Id.* at 13–14). The USCIS also found that Davis lied when he described

his military discharge. (*Id.* at 15). It was not his choice, contrary to what he said.

The burden is on Davis to show his eligibility for citizenship. Any doubts must be resolved in favor of the United States. *Kariuki*, 709 F.3d at 504. Even assuming that Davis has shown a substantial threat of irreparable injury if the temporary restraining order is not granted—which he has not—he has utterly failed to show a substantial likelihood of success on the merits of his claim.

**IV.     Conclusion**

The temporary restraining order application is denied. (Docket Entry No. 4).

SIGNED on March 28, 2017, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge